IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM B. BROTHERS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Civil Action No. 06-1285 |
| | ) | Judge Nora Barry Fischer/ |
| LAWRENCE COUNTY PRISON | ) | Magistrate Judge Amy Reynolds Hay |
| BOARD; WARDEN CHARLES H. | ) | |
| ADAMO; CAPTAIN DIANE RHODES; | ) | |
| NURSE MELISSA MILLER; LYNN | ) | |
| SHARP, Medical Administrator; | ) | |
| CORRECTIONS OFFICER BOSTON; | ) | |
| CORRECTIONS OFFICER JACKSON; | ) | |
| CORRECTIONS OFFICER LUCCINI; | ) | |
| CORRECTIONS OFFICER IWANJENKO; | ) | |
| CORRECTIONS OFFICER WAGNER; | ) | |
| CORRECTIONS OFFICER MARTINO; | ) | |
| CORRECTIONS OFFICER VARGAS; | ) | |
| CORRECTIONS OFFICER WHITE; | ) | Re: Dkt. [41] |
| CORRECTIONS OFFICER JOHN DOE, | ) | |
| | ) | |
| Defendants | ) | |

REPORT AND RECOMMENDATION

RECOMMENDATION

It is recommended that the Moving Defendants' motion to dismiss, Dkt. [41], be granted

in part and be denied in part. It should be granted as to the Plaintiff's Eighth Amendment claims

of Excessive Force and alleged medical indifference to his monorchism, as to all of Plaintiff's

fourteenth Amendment due process claims and equal protection claims, as to all of his state law

claims and as to all of his claims for injunctive relief. It should also be granted as to the Prison

Board, who should be dismissed as a party defendant. It should be denied as to his First

Amendment and Fourth Amendment claims as well as to his Eighth Amendment claims of

medical deliberate indifference to his shoulder injury. In addition, pursuant to the screening

provisions of the PLRA all the claims dismissed against all of the the Moving Defendants should likewise be dismissed against the non moving defendants.

REPORT

William B. Brothers ("Plaintiff") is currently incarcerated in the State Regional Correctional Facility at Mercer ("SRCF Mercer"). He has filed a civil rights complaint pursuant to 42 U.S.C. 1983 suing the Lawrence County Prison Board and several employees or contractors of the Lawrence County Correctional Facility ("LCCF"). At bottom, Plaintiff complains about an incident occurring on January 12, 2006, when Plaintiff was transported from SRCF Mercer to the LCCF. At the time, it appears that Plaintiff was a convicted prisoner. Upon arrival at the LCCF, Plaintiff was directed by a female nurse to strip naked in order for her to inspect Plaintiff and another prisoner who arrived with him, for staph infections, referred to the parties as "MRSA" i.e., "methicillin-resistant Staphylococcus aureus." Plaintiff refused whereas the other prisoner complied. Because he refused to obey the order to strip in front of the female nurse for her to conduct the staph infection inspection, guards came and forcibly stripped him so that the nurse could perform the examination and in the process of doing so, the guards injured his shoulder.

Plaintiff alleges that the forcible strip search in front of females violated his First, Fourth, and Eighth Amendment rights as well as his Fourteenth Amendment due process and equal protection rights. In addition, Plaintiff brings state law claims of negligence, assault, battery and harassment.

**Relevant Procedural History**

Proceeding pro se and in forma pauperis, Plaintiff filed the instant complaint. Dkt. [4]. Subsequently, Plaintiff filed an amended complaint as of right prior to any responsive pleading

having been filed.  Dkt. [28].  The amended complaint is the operative complaint.  The docket

reveals that all named defendants, except the Lawrence County Prison Board, Nurse Melissa

Miller, Medical Administrator Lynn Sharp and Corrections Officer Jackson, have executed

waivers of service.[1]

The firm of Rawle and Henderson entered its appearance on behalf of all of the

Defendants except, Defendants Miller, Sharp and Corrections Officer John Doe.  Dkt. Nos. [31]

& [32].  The firm then filed a motion to dismiss on behalf of all of the defendants they represent,

(collectively, "the Moving Defendants")  pursuant to Fed.R.Civ.P. 12(b)(6), Dkt. [41], and a brief

in support.  Dkt. [42].   Plaintiff filed a response.  Dkt. [44].

**Applicable Legal Principles**

In Erickson v. Pardus, 127 S.Ct. 2197,  2200 (2007), the Supreme Court recently

summarized the legal standards governing motions to dismiss under Rule 12(b)(6) as follows:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement
> of the claim showing that the pleader is entitled to relief." Specific facts are not
> necessary; the statement need only " 'give the defendant fair notice of what the ...
> claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly*,
> 550 U.S. ----, ----, 127 S.Ct. 1955, 167 L.Ed.2d 929, ---- - ---- (2007) (slip op., at
> 7-8) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In addition, when ruling
> on a defendant's motion to dismiss, a judge must accept as true all of the factual
> allegations contained in the complaint. *Bell Atlantic Corp., supra*, at ----, 127
> S.Ct. 1955 (slip op., at 8-9) (*citing Swierkiewicz v. Sorema N. A.*, 534 U.S. 506,
> 508, n. 1(2002) . . . .

It is the defendant who bears the burden of establishing that the complaint fails to state a claim

upon which relief can be granted.  Gould Electronics, Inc. v. United States, 220 F.3d 169, 178

(3d Cir. 2000).

---

[1] Defendants contend in their motion to dismiss that Corrections Officer White never had service
effectuated properly on him.  Dkt. [42] at 4.  However, the Docket reveals that subsequent to the filing of
the Defendants' Motion to Dismiss, C.O. White executed a waiver of service.  Dkt. [45].

Under Rule 12(b)(6), courts may consider, in addition to the complaint, matters of public record and other matters of which a court may take judicial notice, Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994). The question to be resolved is: whether, taking the factual allegations and all reasonable inferences to be drawn therefrom, are the "factual allegations . . . enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact[.]" Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-1965 (2007). Or put another way, a complaint may be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Id. at 1974.

In addition, because Plaintiff is a prisoner proceeding in forma pauperis, Dkt. [3], the screening provisions of 28 U.S.C. § 1915(e) apply. Furthermore, the screening provisions of 28 U.S.C. 1915A apply because Plaintiff is a prisoner who has sued governmental entities or employees thereof. Lastly, because Plaintiff is a prisoner who has brought an action with respect to prison conditions, the screening provisions of 42 U.S.C. § 1997e(c) apply.[2] Pursuant to those screening provisions, a court is obliged to sua sponte dismiss complaints that are frivolous, malicious or that fail to state a claim upon which relief can be granted. The court's obligation to dismiss a complaint under the PLRA screening provisions is not excused even after defendants have filed a motion to dismiss. See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n.6 (9th Cir. 2000). Hence, if there is a ground for dismissal which was not relied upon by a defendant in a

---

[2] Section 1997e also requires exhaustion of administrative remedies by prisoners prior to filing suit, the Moving Defendants did not raise this defense in their motion to dismiss, perhaps, they will do so in their answer. The non-moving defendants have not filed anything yet given that they have not yet been served.

motion to dismiss, the court may nonetheless sua sponte rest its dismissal upon such ground pursuant to the screening provisions of the PLRA.  See Lopez.

**Factual Allegations of the Complaint**

On January 12, 2006, Plaintiff was transported to the LCCF.  Upon arrival in the booking area, Plaintiff was told to strip naked to be examined by Nurse Miller for staff infections.  Plaintiff refused, repeatedly asking if he could be strip searched by a male officer, male nurse or a male doctor.  Defendant Nurse Miller and Defendant Corrections Officer ("C.O.") Luccini answered in the negative.  Nurse Miller then went to get her supervisor, Defendant Lynn Sharp, another female, who, at the time, was the Medical Administrator for LCCF.  Defendant Corrections Office Martino also accompanied them.  When Plaintiff was again directed to strip, he refused indicating that he had his left testicle removed surgically and only had one testicle.  When told that this did not make a difference, Plaintiff continued to refuse to strip naked in the presence of any females.

Shortly after, Defendant Captain Diane Rhodes accompanied by Defendant C.O.s Boston, Jackson, Iwanjenko, Wagner, Vargas, White and Doe, entered the area.  Plaintiff insisted that he was cooperating but only wanted to strip in front of males and not females.  The C.O.s surrounded Plaintiff, Defendant Rhodes ordered the other C.O.s to forcibly strip Plaintiff.  The Defendant  C.O.s physically grabbed Plaintiff, put him in handcuffs and removed all his clothes.  They then lifted him up to place him into an open window so as to lay him on an counter for the Defendant Nurse Miller to examine him.   In the course of doing so, Plaintiff's shoulder was injured.

Plaintiff alleges that the foregoing violated his constitutional rights as well as amounted to violations of state criminal laws for which he seeks to have a civil recovery.

**Discussion**

1. The Prison Board lacks capacity to be sued

The first ground the Moving Defendants raise is that the Lawrence County Prison Board ("Board") is not a proper defendant in this case because it has no corporate identity apart from Lawrence County. In other words, the Board has no capacity to be sued. "Capacity" refers to party's ability to sue and be sued in federal court. Koog v. United States, 852 F. Supp. 1376 (W.D. Tex. 1994), *judgment rev'd on other grounds*, 79 F.3d 452 (5th Cir. 1996) (defining "capacity" with respect to federal courts); Ward v. Baldwin Lima Hamilton Corp., C. A. No. 84-0232, 1985 WL 2830, *1 (E.D. Pa., Sept. 30, 1985)("'Capacity' refers to the ability of an entity to be brought into, or to use, the courts of a forum."). This court agrees that the Board has no capacity to be sued. Cf. Johnson v. City of Erie, 834 F.Supp. 873, 879 (W.D. Pa. 1993) ("numerous courts that have considered the question of whether a municipal police department is a proper defendant in a section 1983 action have unanimously reached the conclusion that it is not" because it does not possess a separate corporate identity from the municipality).

Plaintiff's only response is that he is suing the Board as a policy maker and as a policy maker, the Board can be liable. Plaintiff's argument misses the point. Because the Board has no corporate identity apart from the County, the Board has no capacity to be sued. Hence, the Board should be stricken as a party defendant. See, e.g., Cairns v. Franklin Mint Co., 24 F.Supp.2d 1013 (C.D. Cal. 1998)(moving to strike improper party defendant). Whether other entities can be sued or individual members of the Board can be sued is another matter.

2. First Amendment

The next argument Moving Defendants make is that subjecting Plaintiff, an alleged Muslim, to a strip search in the presence of females, which allegedly violates the tenets of Islam,

fails to state a claim. Defendants concede that this claim is properly analyzed under the reasonableness test of Turner v. Safely, 482 U.S. 78, 89 (1987).[3]   This concession essentially dooms their motion to dismiss because, such a multi-factored fact-intensive test as Turner's does not generally lend itself to being addressed in the context of a motion to dismiss, when under Rule 8, it is not necessary to plead facts, yet alone facts that would necessarily meet all four of the prongs of Turner.  See, e.g., Wolf v. Ashcroft, 297 F.3d 305, 310  (3d Cir. 2002)("As to the need for a foundation for these three [Turner] prongs, it is worth noting that we have historically viewed these inquiries as being fact-intensive. We have said that evaluations of prison restrictions under Turner require 'a contextual, record-sensitive analysis.' *DeHart*, 227 F.3d at 59 n. 8 (remanding 'so that the parties may more fully develop the record'). We have also indicated that courts of appeals ordinarily remand to the trial court where the *Turner* factors cannot be assessed because of an undeveloped record. *Doe v. Delie*, 257 F.3d 309, 317 (3d Cir.2001). If the District Court concludes that the *Turner* analysis cannot be undertaken on an undeveloped record, then the Court should treat the matter as on summary judgment, and rule only after considering the factual basis developed by affidavits or depositions.").[4]  This court is not

---

[3]  In Turner, the Court listed four factors governing the review of prison regulations or actions: (i) whether there is a valid, rational connection between the prison regulation/action  and the legitimate governmental interest put forward to justify it;  (ii) whether there are alternative means of exercising the right in question that remain open to prison inmates;  (iii) whether accommodation of the asserted constitutional right will have an unreasonable impact upon guards and other inmates, and upon the allocation of prison resources generally;  and (iv) whether there are reasonable alternatives available to the prison authorities.  Turner, 482 U.S. at 89-90.  See also Bieregu v. Reno, 59 F.3d 1445, 1457 (3d Cir. 1995)("Though the case before us concerns an alleged pattern and practice of official conduct, rather than a prison regulation, application of the *Turner* standard is appropriate."), *implied overruling on other grounds recognized in*, Oliver v. Fauver, 118 F.3d 175, 178 (3d Cir. 1997).

[4]  That this is so is confirmed by the fact that all of the cases, except one, cited by the Moving Defendants in support of their contention that cross-gender strip searches of inmates fail to state a claim, occurred in the context of disposing summary judgment motions, not motions to dismiss, or in the context of  a trial.  See, e.g., Muhammad v. Bush, 121 F.3d 708 (TABLE), 1997 WL 434382, (6th Cir. 1997) (summary judgment); Letcher v. Turner, 968 F.2d 508, 509  (5th Cir. 1992)("The district judge

convinced that the amended complaint fails to state a claim. At this procedural stage, without any evidentiary record, the alternative means of having a male observe/examine Plaintiff for MRSA (which addresses Turner's third and fourth prongs) casts sufficient doubt on the contention that Plaintiff's claim is not plausible and hence, warrants denial of the motion to dismiss.

### 3. Fourth Amendment

Next, the Moving Defendants assert that Plaintiff's complaint fails to state a Fourth Amendment claim. Moving Defendants do not appear to argue that the Fourth Amendment is wholly inapplicable here, and correctly so, as it appears that prisoners enjoy some limited Fourth Amendment rights as it relates to strip searches and bodily cavity searches. See, e.g., Cornwell v. Dahlberg, 963 F.2d 912, 916-17 (6th Cir. 1992).[5] Hence, because convicted prisoners retain some limited Fourth Amendment rights as it pertains to strip searches, again, as above, the test to be applied is the Turner test of reasonableness.[6] Michenfelder v. Summer, 860 F.2d 328, 331 n.1

---

based his dismissal upon 'matters outside the pleading' and we, therefore, view the 'dismiss[al] with prejudice' ordered by the district court as summary judgment for the defendants." Letcher is further distinguishable from the present case because that case addressed the question of privacy rights and not First Amendment rights); Collins v. Scott, 961 F.Supp. 1009 (E.D. Tex. 1997) (decided by a bench trial); Sabree v. Conley, 815 N.E.2d 280 (Mass.App.Ct. 2004) (summary judgment).

 The sole case cited by Moving Defendants that actually involved a motion to dismiss was James v. Maloney, 861 N.E.2d 810 (Mass.App.Ct. 2007), which is an unpublished opinion that relied mostly on the holding of Sabree without acknowledging the significant procedural differences between a summary judgment motion and a motion to dismiss. This court finds the James v. Maloney case unpersuasive.

 [5] See generally Flyn L. Flesher, Cross- Gender Supervision in Prisons and the Constitutional Right of Prisoners to Remain Free from Rape, 13 Wm. & Mary J. Women & L. 841 (Spring 2007).

 [6] In 1979, the Supreme Court addressed, inter alia, the issue of inmate strip searches and visual bodily cavity searches for pre-trial detainees in Bell v. Wolfish, 441 U.S. 520 (1979), (which coincidentally involved summary judgment motions and trial), and held that the searches conducted therein did not violate the Fourth Amendment. In doing so, the Court held that

> [t]he test of reasonableness under the Fourth Amendment is not capable of
> precise definition or mechanical application. In each case it requires a balancing of the

(9th Cir. 1988)(applying <u>Turner</u> to strip search claim under the Fourth Amendment and stating

that "we believe that *Turner v. Safley*'s suggested factors can be instructive in the context of other

prisoners' rights cases, and have considered them here where applicable."); <u>Thompson v. Souza</u>,

111 F.3d 694, 699 (9th Cir. 1997)("courts have applied the <u>Turner</u> test to prisoners' Fourth

Amendment claims, as well as their First and Fourteenth Amendment claims"); <u>Sinclair v.</u>

<u>Stalder</u>, 78 Fed.Appx. 987, 989 (5th Cir. 2003)("Under the test set forth in *Turner v. Safley*, 482

U.S. 78 (1987) which is properly used to analyze Sinclair's First and Fourth Amendment

claims"); <u>United States v. Workman</u>, 80 F.3d 688, 699 (2d Cir. 1996)("As for Green's Fourth

Amendment claim, under the analysis of *Turner v. Safley*, 482 U.S. 78, (1987), any restriction of

Green's privacy interests is justified to the extent that it is 'reasonably related to legitimate

penological interests.'").   Again, given the multi factored, fact intensive inquiry that <u>Turner</u>

involves, and the questions raised concerning the availability of a male guard, or male nurse or

---

need for the particular search against the invasion of personal rights that the search
entails. Courts must consider the scope of the particular intrusion, the manner in which it
is conducted, the justification for initiating it, and the place in which it is conducted.

<u>Id</u>., at 559.   This court finds that the <u>Bell v. Wolfish</u> test was simply refined or reworded in <u>Turner</u>. <u>Cf</u>.
<u>Jones v. Salt Lake County</u>, __ F.3d __, 2007 WL 2812594, *6 (10th Cir. 2007) ("Although *Turner* had
not yet been decided, the Court [in <u>Bell v. Wolfish</u>] essentially applied its factors.").   Even if however,
the tests of <u>Bell</u> and <u>Turner</u> are distinct, we find that <u>Turner</u> supplants the <u>Bell</u> test, at least for convicted
prisoners as Plaintiff is herein, as opposed to pre-trial detainees.  <u>See</u> <u>Washington v. Harper</u>, 494 U.S.
210, 224 (1990)( "We made quite clear that the standard of review we adopted in *Turner* applies to **all**
circumstances in which the needs of prison administration implicate constitutional rights.")(emphasis
added).   Even if <u>Turner</u> did not supplant <u>Bell v. Wolfiish</u>, and <u>Bell</u> is applicable herein, given the multi-
factored fact-intensive inquiry of the <u>Bell v. Wolfish</u> test, this court would find that such a test, which is
similar to the <u>Turner</u> test, is, as a general rule,  not readily susceptible of being analyzed or disposed of
on a motion to dismiss.  At any rate, the Moving Defendants have not carried their burden to show
entitlement to dismissal of the complaint under either the <u>Bell</u> test or the <u>Turner</u> test.

other male medical personnel, this court cannot say that the Fourth Amendment claim is not plausible.[7]

DiFilippo v. Vaughn, 1996 WL 355336 (E.D.Pa. June 24, 1996) is the sole case cited to by the Moving Defendants that involved a motion to dismiss. However, we find DiFilippo v. Vaughn, unpersuasive. Similar to the Moving Defendants herein, all the cases relied upon in support of the DeFilippo court's Fourth Amendment holding involved summary judgment or trial, not motions to dismiss. The DeFilippo Court did not address this fact in finding the grant of the motion to dismiss proper. Failure to do so, causes this court to find the DeFilippo case unpersuasive for the proposition that Moving Defendants' motion to dismiss should be granted in this case. Hence, the Moving Defendants' motion to dismiss the Fourth Amendment claims should be denied.

### 4. Eighth Amendment claims

Next, the Moving Defendants contend that the Plaintiff's Eighth Amendment claims should be dismissed. Plaintiff's Eighth Amendment claims appear to consist of three distinct claims. One is that he was denied medical care for his injured shoulder. Second, he claims his Eighth Amendment rights were violated because females viewed the fact that he has only one

---

[7] That this is so is again confirmed by the fact that all of the cases cited by the Moving Defendants, except one, appear to involve, not motions to dismiss, but summary judgment motions and or decisions made only after an evidentiary hearing or a trial, which meant there was an evidentiary record developed with respect to the Turner factors, unlike here. See, e.g., Del Raine v. Williford, 32 F.3d 1024 (7th Cir. 1994)(summary judgment and directed verdict, also case addressed Eighth Amendment, not Fourth Amendment); Michenfelder v. Summer, 860 F.2d 328 (9th Cir. 1988)(trial); Goff v. Nix, 803 F.2d 358 (8th Cir. 1986)(after evidentiary hearing, the District Court entered a permanent injunction against some strip searches); Arruda v. Fair, 710 F.2d 886 (1983)(after a bench trial as is made clear in Arruda v. Fair, 547 F.Supp. 1324 (D.Mass. 1982)); Campbell v. Miller, 787 F.2d 217 (7th Cir. 1986)(summary judgment); Castro v. Chesney, 1998 WL 767467 (E.D.Pa. Nov. 3, 1998)(summary judgment); Gutridge v. Chesney, 1998 WL 248913 (E.D.Pa. May 8, 1998) (summary judgment) .

testicle.  Third, Plaintiff claims that the guards' use of force in strip searching him when he refused to strip constituted excessive force.

The Supreme Court has explained that analysis of a violation of the Eighth Amendment involves a two pronged inquiry: (1) an objective inquiry into the qualitative nature of the harm suffered by the victim of the alleged punishment and (2) a "subjective inquiry" into the mind of the person inflicting the harm.  See Wilson v. Seiter, 501 U.S. 294 (1991).  The Court of Appeals for the Third Circuit has explained the objective element as requiring proof that "the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of protections. . . .  If not our inquiry is at an end."  Fuentes v. Wagner, 206 F.3d 335, 344 (3d Cir. 2000).  The Supreme Court has held in the medical context that  "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment."  Estelle v. Gamble, 429 U.S. 97, 104 (1976)(internal quotations omitted).  The Court explained the subjective prong of an Eighth Amendment "deliberate indifference" claim is met when a prison "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Plaintiff's first claim is that "[t]he plaintiff has a medical condition [namely, monorchism]  that would make a prison strip search by any female embarrassing[,]"  Dkt. [28] at 11, ¶56, and the Defendants "did not care that the plaintiff had such a medical condition."  Id., at 12, ¶ 59.  The Court finds that this particular claim cannot plausibly state an Eighth Amendment claim of deliberate indifference because merely having a female nurse or other personnel view a physical handicap/disability in the course of a strip search does not produce a "substantial risk of

serious harm" of which the Defendants knew, nor does it deprive Petitioner of medical treatment that he should have received. In other words, such a "deprivation" (if it can even be called a deprivation) simply was not "sufficiently serious to fall within the Eighth Amendment's zone of protections" as contemplated by <u>Fuentes v. Wagner</u>, 206 F.3d at 344. Hence, this claim should be dismissed. Accordingly the Moving Defendants' motion to dismiss should be granted as to this claim. In addition, for all of the same reasons, this claim should be dismissed as to the non-moving defendants as well pursuant to the PLRA.

Plaintiff's next Eighth Amendment claim is the he was denied medical treatment for six days for his right shoulder which was allegedly injured in the course of the Moving Defendants' forcible strip search of the Plaintiff. Moving Defendants argue that the complaint fails to indicate that Plaintiff told the Defendants of his injury and/or his need for medical treatment. Plaintiff replied that this was an oversight, Dkt. [44] at 7, and that he did notify Defendant Miller and attempted to complain to several guards during the six days he stayed in the RHU. The Court finds this to be sufficient to render the claim plausible and that the Defendants have not carried their burden to show entitlement to dismissal of this claim.

The court next turns to Plaintiff's third Eighth Amendment claim which is a claim that the Moving Defendants engaged in excessive force when they forcibly made him comply with the strip search.

The landmark Supreme Court case in the excessive force area is <u>Hudson v. McMillian</u>, 503 U.S. 1 (1992). In <u>Hudson</u>, the court described the issue before it as "whether the use of excessive force against a prisoner may constitute cruel and unusual punishment when the inmate does not suffer serious injury." <u>Id</u>. at 4. Essentially, the <u>Hudson</u> court rejected the objective prong of the traditional Eighth Amendment analysis and opted instead for a purely subjective

analysis in the excessive force context. The Court held that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in <u>Whitley</u>: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Id</u>. at 6-7. In doing so, the Court jettisoned the traditional objective prong inquiry for establishing an Eighth Amendment claim. <u>See</u> <u>id</u>. at 22-23 (Thomas, J., dissenting)("In the context of claims alleging the excessive use of physical force, the Court then asserts, the serious deprivation requirement is satisfied by no serious deprivation at all. 'When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated.' *Ibid.* Ascertaining prison officials' state of mind, in other words, is the *only* relevant inquiry in deciding whether such cases involve cruel and unusual punishment. . . . The sum and substance of an Eighth Amendment violation, the Court asserts, is 'the unnecessary and wanton infliction of pain.' This formulation has the advantage, from the Court's perspective, of eliminating the objective component.")(some citations omitted and quotation marks modified). The Court of Appeals has recognized this jettisoning of the objective prong in the context of an excessive force claim. <u>Brooks v. Kyler</u>, 204 F.3d 102, 108 (3d Cir. 2000)(In *Hudson*, the Court distinguished between prisoner conditions-of-confinement and medical-deprivation claims, on the one hand, and wanton use of unnecessary force claims on the other. Although the former kind of claim cannot survive without evidence that a deprivation was "harmful enough" . . . , the latter kind of claim has no such requirement"). Accordingly, to establish an Eighth Amendment excessive force claim, no objective showing need be made. Accordingly the Court rejects the Moving Defendants' contention that "the Supreme Court emphasized that a use of force claim has a subjective and objective component." Dkt. [42] at 11.

The rule is that de minimis use of force, which is itself not repugnant to human decency, does not state an Eighth Amendment claim of excessive force. <u>See</u>, <u>e.g.</u>, <u>Hudson</u>, 503 U.S. at 9-10 ("The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'").

Here, the complaint recounts the use of force by the Moving Defendants in response to Plaintiff's refusal to obey a order to strip so that he may be examined for MRSA. Plaintiff does not deny that he refused to comply, instead he claims only that he requested that he not be examined by a female. The use of force recounted by the Plaintiff in the complaint shows that the force used was no more than necessary to get Plaintiff to comply with the requirement that he be examined, even if it was to be examined by a female. The complaint's factual allegations show that the force used was applied "in a good-faith effort to maintain or restore discipline," i.e., to make Plaintiff comply with the requirement that he undergo a stip search in order to be examined for MRSA, which could pose a threat to the health and welfare of all those who Plaintiff could come into contact with, if he in fact had MRSA. Hence, the force utilized was not used "maliciously and sadistically to cause harm." <u>See</u>, <u>e.g.</u>, <u>Honorable v. Osborne</u>, 2005 WL 1631015, *3 (W.D.Ky. July 7, 2005) ("In fact, prison officials may use physical force in the form of tasers in order to compel obedience by inmates."). To the extent that Plaintiff claims that there was no need for force because he would have complied with a strip search so long as no female was involved, the answer is that Plaintiff cannot dictate to his jailers how, when and where they are to conduct their strip searches; any other rule would be to invite anarchy in the prisons, his proper response would have been to obey and thereafter seek redress. <u>See</u>, <u>e.g.</u>, <u>Collins v. Scott</u>, 961 F.Supp. 1009 (E.D. Tex. 1997)(finding that the use of a Nova Shield to

shock a non-compliant Muslim prisoner who refused to strip search in front of a female did not violate Plaintiff's Eighth Amendment rights to be free of excessive force and holding that "[t]he Plaintiff's persistence in disobeying orders [to undergo the strip search] intensified the seriousness of the breach of security. The decision to use force was reasonable. The Plaintiff emphasized that the matter could have been avoided if officials would have allowed him to be strip searched by a man, as opposed to a female. However, inmates cannot be allowed to dictate policy. When Jackson ordered him to strip search, he was obligated to comply with the order or suffer the consequences of refusing to obey the order. The use of some force was reasonable.").

This is true, notwithstanding Plaintiff's allegation that one of the guards bumped Plaintiff's shoulder into the wall causing injury in the course of the process of forcing Plaintiff to comply with the requirement that he undergo a strip search. The allegations at most amount to negligence, not an act done "maliciously and sadistically to cause harm." Daniels v. Williams, 474 U.S. 327, 333 (1986)("injuries inflicted by governmental negligence are not addressed by the United States Constitution"); Woodward v. City of Worland, 977 F.2d 1392, 1399 (10th Cir. 1992)("[L]iability under § 1983 must be predicated upon a 'deliberate' deprivation of constitutional rights by the defendant,' and not on negligence."); Kwasnik v. LeBlon, 228 Fed. Appx. 238 (3d Cir. 2007)("Liberally construing the Amended Complaint, as we must, we conclude that the allegations, and reasonable inferences drawn therefrom, at best, merely state a negligence claim. Negligence claims are not cognizable under § 1983."). Accordingly, the "factual allegations [plead in the complaint are not] . . . enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true" within the contemplation of Bell Atlantic Corp. v. Twombly, 127 S.Ct. at 1964-1965. The Moving Defendants' motion to dismiss the Eighth Amendment excessive force claim should be granted.

In addition, this claim should be dismissed against the non moving defendants as well pursuant to the PLRA.

     5. <u>Equal Protection</u>

Next, the Moving Defendants point out that Plaintiff's complaint fails to state an equal protection violation. Plaintiff claims he was denied equal protection because the Prison Board failed to either "arrest or discipline any of the county prison officials requested by plaintiff, and failed to answer any of the plaintiff's complaints to the PRISON BOARD, indicating that they was [sic] not going to prosecute any of their employees from the Lawrence County Corrections in a trial involving an 'unlawful prison strip search' and 'assault' even when the police reports and the plaintiff's statement gave a full picture of the incident." Dkt. [28] at 17, ¶ 86.

In order to state an equal protection claim, the complaint must demonstrate that: (1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person. <u>See</u> <u>Zahra v. Town of Southold</u>, 48 F.3d 674, 683 (2d Cir. 1995).

Presently the factual allegations of the complaint as recounted are simply not "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964-1965 (2007). This is so even if we consider Plaintiff's response, wherein he claims solely that he was treated differently from others, i.e., whereas he was stripped search, others who were "transferred into

LCC from another correctional facility" (Dkt. [44] at 13), were not stripped search.[8]  However, the complaint is silent with respect to the second requirement, i.e., that the defendants acted with essentially a bad motive.  Instead, taking the complaint's allegations and inferences to be drawn therefrom in a light most favorable to Plaintiff, the complaint alleges that the Defendants stripped searched him in the presence of females, but did not strip search others, or at least not in the presence of females, but fails to allege that this arose out of any impermissible basis, other than the "fact" that cross gender searches violate state policy or state law.  However, a mere violation of state law, assuming that there is a state law  or its equivalent, prohibiting cross gender strip searches, without more is insufficient to state a claim upon which relief can be granted under Section 1983.  Berlanti v. Bodman, 780 F.2d 296, 301 n.5 (3d Cir. 1985)("Defendants correctly state that to the extent the complaint alleges that defendants' conduct merely violated state law, it fails to state a claim under 42 U.S.C. § 1983.").  Accordingly, the Moving Defendants' motion to dismiss should be granted as to this claim.  Likewise, this claim should be dismissed against the non-moving defendants pursuant to the PLRA for failure to state a claim.

     6. Due Process

---

    [8] Such a claim, i.e., Plaintiff was strip searched whereas others were not,  actually appears to be an amendment of the complaint insofar as the equal protection claim is concerned.  In the amended complaint, the equal protection claim seems to complain of the fact that Plaintiff was denied the equal protection of the laws because the Defendants were not prosecuted under state law and/or fired for their wrongdoing.  Dkt. [28] at 16 to 18 (section of complaint setting forth equal protection claim).  Plaintiff's apparent attempt to amend the complaint to change the facts of his equal protection claim via a response to a motion to dismiss is not permissible.  Grayson v. Mayview State Hospital, 293 F.3d 103, 109 n.9 (3d Cir. 2002)("For the sake of clarity, a prisoner plaintiff (or any other plaintiff) should not be able effectively to amend a complaint through any document short of an amended pleading.");  Commonwealth of Pa. ex. rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").  Nevertheless, the court will consider Plaintiff's claims that he was strip searched by a female whereas others were not because Plaintiff does make such an allegation but just not under the heading of equal protection.  See Dkt. [28] at 10, ¶¶ 49-51.

Next, the Moving Defendants point out that Plaintiff's amended complaint fails to state a claim of the denial of due process.

Plaintiff's complaint does not make clear whether he is making a claim of procedural or substantive due process or both. Given his pro se status the court will consider Plaintiff to be making both claims.

Conducting a procedural due process analysis involves a two step inquiry: the first question to be asked is whether the complaining party has a protected liberty or property interest within the contemplation of the Due Process clause and, if so, the second question to be asked is whether the process afforded the complaining party comported with constitutional requirements. Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000).

Plaintiff may be complaining that the actions of the Moving Defendants deprived him of procedural due process. Plaintiff does not make clear what he is basing his procedural due process claim on.

Plaintiff may be complaining that the Moving Defendants strip searched him in violation of policy. See, e.g., Dkt. [28] at 12, ¶ 62 ("under no circumstances is a female nurse authorized to perform a prison strip search of a male prisoner under any jail policy anywhere in the Commonwealth of Pennsylvania."). If Plaintiff's claim is that he has a liberty interest to be free from random unauthorized acts by Defendants and that the Defendants have not provided adequate process before he has been deprived of this "liberty interest," the court is hard pressed to imagine what pre-deprivation process (i.e., notice and an opportunity to be heard) the Defendants could put in place before they deprive him of this "liberty interest", i.e., before the Defendants engage in such random unauthorized behavior contrary to state policy. The very

concept of procedural due process renders it inapt to the random unauthorized acts of prison officials.

Indeed, what the Court of Appeals for the Third Circuit said in <u>Brown v. Muhlenberg Township</u>, 269 F.3d 205, 213 (3d Cir. 2001) is equally applicable here. The Court declared that "[w]hen the complained of conduct is 'random and unauthorized' (so that state authorities cannot predict when such unsanctioned deprivations will occur), however, the 'very nature of the deprivation ma[kes] predeprivation process impossible.' In such situations, postdeprivation process is all that is due." <u>Id</u>. (citations omitted). Nor does it matter that the Defendants' behavior complained of by Plaintiff might be foreseeable because "[w]hether an individual employee himself is able to foresee a deprivation is simply of no consequence. The controlling inquiry is solely whether the state is in a position to provide for predeprivation process." <u>Hudson v. Palmer</u>, 468 U.S. 517, 534 (1984). Here, the nature of the alleged deprivations renders a pre-deprivation hearing an impossibility due to the randomness of the Defendants' actions.

Morever, as a matter of law, it cannot be said that the random act of guards engaging in unauthorized cross gender strip searches in alleged violation of state law constitutes an atypical and significant hardship within the meaning of <u>Sandin v. O'Connor</u>, 515 U.S. 472 (1995). <u>See</u>, <u>e.g.</u>, <u>McGill v. Czerniak</u>, 83 F.3d 427 (Table, text available in Westlaw)(9th Cir. 1996)("Finally, McGill's Fourteenth Amendment due process rights were not violated because the prison's failure to adhere to regulations governing inmate searches did not present the type of atypical and significant deprivation that might conceivably create a liberty interest."); <u>Phillips v. Norris</u>, 320 F.3d 844, 847 (8th Cir. 2003) ("there is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations."). Thus, even if a

procedural due process challenge could be mounted to such random acts, the mere exposure to such random acts, which apparently occur all too frequently in the context of a prison, cannot, as a matter of law, constitute a hardship that can be called atypical.

In the alternative, Plaintiff could be asserting that the Moving Defendants performed the strip search pursuant to a policy.  Dkt. [28] at 15, ¶ 77 ("On information and belief, RHODES, MILLER and SHARP conspired to strip search the plaintiff on the basis of a policy directive issued by defendant PRISON BOARD.").   Even if we assume that the strip search was performed pursuant to a policy, the fact (of which this court takes judicial notice) that prisoners are subjected to strip searches with sufficient frequency in the prisons and jails given the overriding security concerns, especially upon entering a new facility, and given that strip searches for MRSA upon entrance into a facility from another facility are inherently reasonable, Plaintiff's allegations that he was subjected to a strip search even if in the presence of females, fails to state a claim because such a strip search does not, as a matter of law, impose an atypical and significant hardship in relation to the ordinary incidents of prison life as is required under <u>Sandin</u> in order to constitute a liberty interest.   <u>See</u>, <u>e.g.</u>, <u>Drummer v. Luttrell</u>, 75 F.Supp.2d 796, (W.D.Tenn. 1999)(Strip-search of inmate as part of disciplinary procedure did not support inmate's § 1983 action against corrections officials alleging due process violations, since officials' actions did not impose atypical and significant hardship upon inmate), <u>aff'd</u>, 234 F.3d 1268 (6th Cir. 2000) (Table, Text in Westlaw).   This is  because "[i]n ascertaining whether something is an 'atypical and significant' hardship, we must consider 'what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law[,]'"  <u>Fraise v. Terhune</u>, 283 F.3d 506, 522 (3d Cir. 2002), and we know that strip searches are all too routine an occurrence in jails and prisons, especially in jails where there is

frequent movement of inmates into and out of the facility.  See, e.g.,  Schenck v. Wood, NO. CY-94-3117-LRS, 1996 WL 190814 (E.D. Wash., Jan. 29, 1996)("In *Mitchell v. Dupnik*, the Ninth Circuit found that violation of a jail regulation providing for inmates to be present when their legal papers were searched did not present the type of atypical and significant deprivation in which a state might conceivably create a liberty interest, because the **prisoner,** his cell and all his other possessions **were already subject to inspection at any time for any or no reason**.")(emphasis added), aff'd, 113 F.3d 1242 (9th Cir. 1997).   Accordingly, the Moving Defendants' motion to dismiss should be granted as to Plaintiff's procedural due process claim. Similarly, the claim should be dismissed against the non moving defendants pursuant to the PLRA.

To the extent that Plaintiff seeks to raise a substantive due process claim, such claims must be dismissed as this court finds that they are all barred by the doctrine of Albright v. Oliver, 510 U.S. 266 (1994)(plurality) and Graham v. Connor, 490 U.S. 386 (1989).

As has been observed, the Supreme Court "has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended."  Albright v. Oliver, 510 U.S. 266, 271-272  (1994) (plurality opinion). As a result of inadequate guideposts, the court has limited the availability of claims under substantive due process to those which are not covered by the legal tests and standards under other amendments.  County of Sacramento v. Lewis, 523 U.S. 833 (1998).  The Supreme Court has described this limitation on substantive due process claims as follows:

> *Graham* simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision and not under the rubric of substantive due process.

County of Sacramento, 523 U.S. at 843.[9]  The Court finds that all of Plaintiff's constitutional claims are covered under either the First, Fourth or Eighth Amendment standards.  Accordingly, Plaintiff does not have an additional cause of action under the Fourteenth Amendment's more open ended due process clause standard of shocks the conscience or arbitrary and irrational behavior.  Hence, all of Plaintiff's substantive due process clause claims must be dismissed for failure to state a claim upon which relief can be granted against both the Moving Defendants and the non-moving defendants.

### 7. Conspiracy

Next the Moving Defendants point out that although Plaintiff has alleged in a conclusory fashion a conspiracy, such conclusory allegations fail to state a claim.  Defendants are correct. Conclusory allegations of conspiracy are insufficient to state a claim upon which relief can be granted.  See e.g., Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989)("[t]he allegations [of conspiracy] must be sufficient to 'describe the general composition of the conspiracy, some or all of its broad objectives, and the defendant's general role in that conspiracy.'").  The amended

---

[9]  The holding of the of Supreme Court cases in Graham and Albright is not that the specific amendment must apply in order to supplant any substantive due process claim. This is because the specific amendment in both of those cases (i.e., the Fourth Amendment) did not, strictly speaking, apply.  The Court in both of those cases utilized the Fourth Amendment standards, however, the Fourth Amendment specifically applies only against federal government actors and not against state government actors.  See Mapp v. Ohio, 367 U.S. 643 (1961)(making the standards of the Fourth Amendment applicable to the states through the doctrine of incorporation via the Fourteenth Amendment).  In both Graham and Albright, the suits were against state actors.  Nevertheless, the Albright and Graham courts held that because the Fourth Amendment specifically addressed the factual situation of arrests without probable cause (Albright) and excessive force in effectuating arrests (Graham), the standards of the Fourth Amendment supplant the standards of substantive due process and the claims had to be analyzed under the Fourth Amendment standards even though the Fourth Amendment itself did not directly apply since the defendants being sued were state, not federal, actors. Accordingly, the claims could not be analyzed under the more open ended standards of substantive due process.

complaint fails to comply with <u>Rose v. Bartle</u>'s requirements.  Nor does this requirement that

allegations of conspiracy be more than conclusory run afoul of the generous pleading standard

under Fed.R.Civ.P. 8(a) as construed in <u>Leatherman v. Tarrant Cty. Narcotics Intelligence &</u>

<u>Coordination Unit</u>, 507 U.S. 163 (1993). <u>See</u>, <u>e.g.</u>, <u>Loftus v. SEPTA</u>, 843 F.Supp. 981, 988 (E.D.

Pa. 1994) ("Requiring that a complaint alleging conspiracy flesh out in some detail the nature of

the scheme does not run afoul of the admonition in *Leatherman* .... Rather, in the context of a

conspiracy, the 'short and plain statement' provision of Rule 8 is satisfied only if the defendant is

provided with the degree of particularity that animates the fair notice requirement of the rule.").

Hence, because the conspiracy claim is conclusory, it should be dismissed as against all of the

Defendants.

### 8.  Qualified Good Faith Immunity

The Moving Defendants next argue that the complaint should be dismissed based upon

their qualified immunity.  The Court of Appeals

> has explained that a qualified immunity analysis must begin with this
> threshold question: do the facts alleged, viewed in the light most favorable to the
> party asserting the injury, show that the officer's conduct violated a constitutional
> right? *Saucier*, 121 S.Ct. at 2156. If the plaintiff fails to allege the violation of a
> constitutional right, no further inquiry is necessary. If, however, the alleged facts
> show that there was a constitutional violation, then the next step is to ask whether
> the right was clearly established. *See id*. In other words, a court must consider
> "whether it would be clear to a reasonable officer that his conduct was unlawful in
> the situation he confronted." *Id*. (*citing Wilson v. Layne*, 526 U.S. 603, 615
> (1999)). This inquiry, the Court noted, "must be undertaken in light of the specific
> context of the case, not as a broad general proposition." *Id*. If a court concludes
> that an officer's conduct did violate a clearly established constitutional right, then
> it must deny him the protection afforded by qualified immunity.

<u>Curley v. Klem</u>, 298 F.3d 271, 277 (3d Cir. 2002), *abrogation on other grounds recognized in,*

<u>Curley v. Klem</u>, 499 F.3d 199 (3d Cir. 2007).  Defendants argue that the law of the United States

Supreme Court and the Third Circuit did not clearly establish that Plaintiff had a First

Amendment right not to be strip searched by a female nor was any other constitutional right not to undergo a cross gender strip search clearly established. The Defendants appear to assume, at least in part, that when this court conducts a clearly established analysis, the only proper precedent to look to is that emanating from either the Supreme Court or from within the Third Circuit. However, this court is not convinced that there are such limitations. <u>Wilson v. Layne</u>, 526 U.S. 603, 617 (1999) ("Petitioners have not brought to our attention any cases of controlling authority in their jurisdiction at the time of the incident which clearly established the rule on which they seek to rely, **nor** have they identified a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful.")(emphasis added); <u>McClendon v. City of Columbia</u>, 305 F.3d 314, 329 (5th Cir. 2002) (overruling the statement, from a prior case, that "we are confined to precedent from our circuit or the Supreme Court" in deciding whether a right was clearly established because it was inconsistent with the Supreme Court's method of analysis in <u>Wilson</u>); <u>Doe v. Delie</u>, 257 F.3d 309, 321 n.11 (3d Cir. 2001)(considering cases outside the Circuit to determine whether a right was clearly established and stating that "[t]he absence of circuit precedent does not mean an official will always retain the immunity defense."); <u>Brown v. Muhlenberg Twp.</u>, 269 F.3d 205, 211 n.4 (3d Cir. 2001) ("If the unlawfulness of the defendant's conduct would have been apparent to a reasonable official based on the current state of the law, it is not necessary that there be binding precedent from this circuit so advising."). In light of this, and in light of the fact that the Court of Appeals for the Fifth Circuit held as early as 1999 in <u>Moore v. Carwell</u>, 168 F.3d 234 (5th Cir. 1999), that a cross gender strip search could violate the constitution where no exigent circumstances required a cross gender, as opposed to a same gender strip search, Defendants have not carried their burden at this stage to show the law was not clearly established. <u>See</u>, <u>id</u>., at 237 ("Barbara Carwell conducted

24

these [strip] searches [upon a male inmate] despite the absence of emergency or extraordinary circumstances. Additionally, Moore contends that the male Defendants were present during the search, suggesting that male officers were available to conduct the searches. Assuming Moore's allegations are true, we hold that this claim is not frivolous because the facts he alleges could entitle him to relief for a Fourth Amendment violation.").   The Court finds that Moving Defendants have not established their entitlement to qualified immunity as to the Fourth Amendment claim.[10]

Similarly, the Defendants contend that they are entitled to qualified immunity as to Plaintiff's First Amendment claim, citing <u>Canedy v. Boardman</u>, 91 F.3d 30 (7th Cir. 1996). However, that case merely established that, at the time of the cross gender strip search conducted therein, i.e., February 21, 1992,[11] the right to not be subject to cross gender strip searches based on religious scruples had not yet been clearly established.  However, it does not follow from <u>Canedy</u>, that nearly fourteen years later, on January 12, 2006,  the date of the strip search herein, there was no clearly established law barring cross gender strip searches based upon religious scruple absent exigent circumstances. <u>Cf</u>.  <u>Jones v. Shabazz</u>,  2007 WL 2873042, at *17 (S.D. Tex. Sept. 28, 2007)("Defendants have not addressed Plaintiff's other claim, that during clothing

---

[10]  Because the Defendants relied upon their mistaken view of the proper analysis to be undertaken to find "clearly established" they simply stated that there were no Supreme Court or Third Circuit cases establishing the right not to be stripped searched.  Now that they are relieved of their mistaken belief, any denial of their motion to dismiss based upon a claim of qualified immunity is without prejudice to them reasserting their qualified immunity at the summary judgment stage, by making the argument that they are entitled to qualified immunity based on the state of the law even outside this Circuit.  It may be that the Fifth Circuit's decision in <u>Moore v. Campbell</u> is aberrational, or that there is a great deal of conflicting Circuit Court opinion but this will be for the Moving Defendants to ferret out, not this court.

[11]  See <u>Canedy v. Boardman</u>, 801 F.Supp. 254, 255 (W.D. Wis. 1992)(recounting the facts alleged in the complaint).

exchanges he is required to stand in the nude in the presence of females while waiting to be issued a clean pair of boxer shorts before and after showers. Accordingly, summary judgment will be denied without prejudice on this clothing-exchange claim.")(citation omitted); Show v. Patterson, 955 F.Supp. 182 (S.D.N.Y. 1997)(requiring Muslim inmates to expose genitals in presence of strangers during a strip search could state a First Amendment claim). At the very least, Moving Defendants have simply failed to carry their burden to show entitlement to qualified immunity at this stage.

### 9. Injunctive Relief Claims

Plaintiff brings a number of claims for injunctive relief. Dkt. [28] at 23 to 28. As the Moving Defendants point out, Plaintiff has long ago been transferred out of LCCF and to the SRCF Mercer. Hence, any request for injunctive relief would be moot. Where a plaintiff seeks injunctive relief for prison conditions that he is no longer be subject to, there is no longer a live controversy and a court cannot grant that injunctive relief. See Abdul-Akbar v. Watson, 4 F.3d 195, 206 (3d Cir. 1993); Fortes v. Harding, 19 F.Supp.2d 323, 326 (M.D.Pa. 1998); Marrie v. Nickels, 70 F.Supp.2d 1252, 1259 (D.Kan. 1999) ("Generally, an inmate's transfer to another prison or release moots his request for declaratory or injunctive relief.") (collecting cases). This is true, notwithstanding Plaintiff's claim that he may be transferred back to LCCF for court appearances. This is so because it does not appear that Plaintiff has any active cases in the Lawrence County Court of Common Pleas. His PCRA petition challenging his drug convictions was dismissed,[12] and there is an appeal pending now in the Superior Court. As to his state habeas

---

[12] The Court takes judicial notice of the Dockets of the Court of Common Pleas of Lawrence County and specifically the case involving Petitioner's PCRA petition which is available at

http://ujsportal.pacourts.us/PublicReporting/PublicReporting.aspx?rt=1&&ct=4&dkt=5111700&arch=0 &ST=11/13/2007%204:05:10%20PM

petition filed at No. 147 of 1989, the Court of Common Pleas transferred that to the Superior Court which rendered a decision that was docketed in the Common Pleas court September 13, 2007.[13]  Hence, there is nothing active  in the Common Pleas Court of Lawrence County that would make it anything other than speculative that Plaintiff could be returned there.  See, e.g., Chapdelaine v. Keller, No. 95-CV-1126, 1998 WL 357350, at *4 (N.D.N.Y. April 16, 1998) ("plaintiff is no longer incarcerated at Ray Brook and is no longer housed in a four person cell. He is not subject to any real or imagined 'threats, intimidation, or harassment' by the Ray Brook staff. Furthermore, there is no indication that plaintiff's transfer to McKean is temporary or that he will return to Ray Brook. Consequently, plaintiff's request for an injunction that restrains Ray Brook officials from violating his civil rights is moot and should be dismissed....").[14]  Hence, the injunctive relief claims should be dismissed against all of the Defendants.

   10.  State Law Claims

Plaintiff also attempts to make several state law claims.  See, e.g., Dkt. [28] at 20, ¶ 98 (invoking 18 Pa.C.S. § 2701 (battery); id., at 20 to 21 ¶ 100 (invoking 18 Pa.C.S. §  903 (criminal conspiracy) and § 2709 (harassment); id. at 22 to 23, ¶ 107 (invoking 18 Pa.C.S. § 302(b)(4) (negligence)).  However, Plaintiff's attempt to invoke these Pennsylvania criminal statutes in order to provide him with a private civil cause of action is unavailing insofar as none of the statutes evince a legislative purpose of granting a private cause of action or otherwise

_____

[13]  See the Lawrence County Common Pleas Court Docket of the state habeas petition at

http://ujsportal.pacourts.us/PublicReporting/PublicReporting.aspx?rt=1&&ct=4&dkt=5112009&arch=0
&ST=11/13/2007%204:06:41%20PM

[14]  Plaintiff appears to seek injunctive relief in the form of release from his conviction/sentence. Dkt. [28] at 26. ¶ C.1.  However, nothing in his complaint would justify such relief.  Nor, to the extent that anything in the complaint would justify such relief, would it be cognizable in this civil rights action pursuant to Heck v. Humphrey, 512 U.S. 477 (1994).

satisfy the criteria for establishing a private right of action.  See  D'Errico v. DeFazio, 763 A.2d 424 (Pa. Super. 2000)(setting forth the analysis to determine whether criminal statutes provide a private cause of action).  Hence, Plaintiff's state law claims should all be dismissed against all of the Defendants.

CONCLUSION

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.

Respectfully submitted,

/s/  Amy Reynolds Hay
United States Magistrate Judge


Dated:  29 November, 2007


cc:     The Honorable Nora Barry Fischer
        United States District Judge


cc:     William B. Brothers
        BB-5485
        SCI Mercer
        801 Butler Pike
        Mercer, PA 16137

        All counsel of record by Notice of Electronic Filing